UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REINALDO GARCIA,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:22-cv-01205-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 23). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability and supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

Plaintiff argues as follows:

1. The ALJ harmfully erred by failing to find Mr. Garcia's mental impairments "severe" at step Two, rendering the RFC not based on substantial evidence.

2. The ALJ harmfully erred by failing to provide substantial evidence to reject the only treating physician opinion of limitations regarding combination of impairments.

1

(ECF No. 21, p. 6).

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows.

**I.    ANALYSIS**

**A.    Step Two**

Plaintiff argues that the ALJ erred by not finding his mental impairments severe at Step Two, which made "the RFC not based on substantial evidence." (ECF No. 21, p. 16). Defendant argues that the ALJ properly concluded that Plaintiff had mild mental limitations that did not amount to a severe mental impairment and that "any error [would be] harmless because Plaintiff cannot establish greater limitations in the RFC." (ECF No. 23, p. 7).

The Ninth Circuit has provided the following guidance regarding whether medically determinable impairments are severe under Step Two:

> An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." [*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)] (internal quotation marks omitted) (emphasis added); *see Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988). The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." S.S.R. No. 85–28 (1985). Step two, then, is a "de minimis screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments. *See also Yuckert*, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").

*Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 686.

Here, the ALJ found that Plaintiff had the following severe impairments: "chronic obstructive pulmonary disease, diabetes mellitus, and gastroparesis (20 CFR 404.1520(c) and

416.920(c))." (A.R. 20). The ALJ noted that Plaintiff "had diagnoses of schizophrenia spectrum and other psychotic disorder, anxiety disorder, bipolar disorder, depressive disorder, and substance addiction disorders (Exhibits 4F, 6F, and 14F)" but concluded that "the evidence supports they cause no more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (A.R. 21). Generally, the ALJ reasoned that they were not severe because "the evidence [showed his] condition[s] [were] controlled with medication," noting that Plaintiff "even stated that medication controlled his symptoms" and "his mental status examinations were essentially normal (Exhibits 4F, 6F, 14F, and 19F)." (A.R. 21). Thereafter, the ALJ discussed the four broad areas of mental functioning that are known as the "paragraph B" criteria:

> The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. The claimant reported that he requires reminders to take medication. He stated he could count change. The claimant noted difficulty with following instructions. He indicated he watches television (Exhibit 5E). Mental status examinations the claimant's memory was intact (Exhibits 4F, 6F, 14F, and 19F). The claimant testified he lives alone, and is able to read, grocery shop, play the guitar, manage his finances, and perform some household chores.
>
> The next functional area is interacting with others. In this area, the claimant has mild limitation. The claimant reported no difficulty with getting along with others. He stated he goes grocery shopping. The claimant noted he spends time with others (Exhibit 5E). The claimant testified he does not like to go out around people; however, he grocery shops in stores and spends time with his family. On mental status examinations, the claimant was cooperative and made good eye contact (Exhibits 4F, 6F, 14F, and 19F).
>
> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. The claimant alleged difficulty with concentration and completing tasks. However, he reported he could complete household chores. He stated he could go grocery shopping. The claimant noted he watches television (Exhibit 5E). He testified that he lives alone, and is able to read, grocery shop, play the guitar, and manage his finances. On mental status examinations, there is no indication of difficulty with concentration or attention (Exhibits 4F, 6F, 14F, and 19F).
>
> The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant lives alone and reported he takes care of his own care with verbal reminders. He stated he could prepare frozen meals

and sandwiches. The claimant noted he could perform household chores. He indicated difficulty with handling stress and changes in routine (Exhibit 5E). However, on mental status examinations, the claimant was consistently cooperative. His general appearance was good. He had some depressed or anxious moods but was attentive and goal directed. His insight and judgment were appropriately (Exhibits 4F, 6F, 14F, and 19F).

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

(A.R. 21-22).

The Court acknowledges that Plaintiff had multiple normal mental health examinations and that there are indications that medication helped control his symptoms. However, it ultimately agrees with Plaintiff that the record, as a whole, demonstrates that Plaintiff made the de minimis showing that his mental conditions were severe for purposes of Step Two. *See Glanden v. Kijakazi*, No. 22-35632, 2023 WL 7860717, at *4 (9th Cir. Nov. 16, 2023) ("Each time we have reviewed an ALJ's step-two analysis, we have reiterated the corollary principles that claimants need only make a de minimis showing for the analysis to proceed past this step and that properly denying a claim at step two requires an unambiguous record showing only minimal limitations.").

Among other things, mental health examinations revealed that Plaintiff was depressed, delusional, anxious, experienced an inability to sleep, and had impaired judgment. (*See e.g.*, A.R. 577, 589, 616). Further, Plaintiff reported symptoms which would be expected to affect his ability to work, such as getting only three to four hours of sleep over a period of four to five months and crying due to not wanting to get out of bed. (A.R. 714, 718). Additionally, there is evidence indicating that Plaintiff's symptoms were more severe than the ALJ characterized them to be. For example, his symptoms were noted to be worsening, moderate, and occurring most days with treatment being ineffective; Plaintiff went to the ER because his anxiety was so severe, and he was noted to have severe depression. (A.R. 714, 719, 721).

Accordingly, the ALJ erred by determining that Plaintiff did not make the de minimis showing necessary to establish that his mental conditions were severe at Step Two.

Defendant argues that "any error is harmless because Plaintiff cannot establish greater limitations in the RFC." (ECF No. 23, p. 8). However, as Plaintiff points out, the ALJ did not consider his mental conditions, or limitations from them, at all in formulating the RFC. Accordingly, the Court cannot find harmless error.

### B. Dr. Montoy's Opinion

Plaintiff argues that the ALJ "harmfully erred by making an extremely vague and unreferenced 'consistency' and 'supportability' analysis that . . . fails to even indicate that the ALJ considered Dr. Montoya's limitations based on the combination of psychiatric impairments with physical impairments such as fatigue and anxiety." (ECF No. 21, p. 28). Defendant argues that the ALJ properly evaluated this opinion under the pertinent legal standards. (ECF No. 23, p. 8).

Because Plaintiff applied for benefits in 2020, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (A.R. 18). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the

> special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

With the above standards in mind, the Court turns to the opinion of Dr. Montoy. In deeming this opinion "less persuasive," the ALJ stated as follows:

> On June 8, 2021, Jorge Montoy, M.D., completed a medical source statement and noted he treated the claimant since March 2019 for diabetes mellitus. He indicated the claimant's prognosis was fair. Dr. Montoy noted the claimant's emotional factors contribute to the severity of his symptoms and functional limitations. He stated the claimant could walk ½ block without rest or severe pain. The claimant could lift and carry 20 pounds frequently, stand and walk less than two hours, and sit about two hours. Dr. Montoy indicated the claimant would need unscheduled breaks every hour lasting 20 minutes. He could occasionally twist and stoop and rarely crouch/squat, climb stairs, and climb ladders. Dr. Montoy stated the claimant would be off task 25 percent of the workday. He indicated the claimant was incapable of even low stress work (Exhibit 21F). The undersigned finds the opinion of Dr. Montoy less persuasive as there is no evidence to support such limitations. The claimant's examinations were essentially normal. The record supports the claimant does not experience complications of diabetes mellitus. The record also reflects the claimant was not always entirely compliant with treatment (Exhibits 3F, 6F, 15F, 16F, and 27F).

(A.R. 26).

As to supportability, the ALJ reasonably concluded that the lack of evidence to support

these extreme limitations was a basis to deem Dr. Montoy's opinion less persuasive. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion."). Notably, Dr. Montoy's opinion was contained on a check-box style form, without any indication as to what evidence specifically supported the opined limitations. (A.R. 1483-86).

As to consistency, the ALJ reasonably concluded that Dr. Montoy's opinion was inconsistent with normal examinations, the fact that Plaintiff did not experience complications from diabetes, and that he was not always compliant with treatment. Notably, earlier in the decision, the ALJ noted among other things that "[t]reatment notes from 2019 through 2020 supported the claimant's diabetes mellitus was without complication despite not being fully compliant with treatment (Exhibits 3F, 6F, 15F, and 16F)"; that while his blood sugar levels were not fully controlled in early 2021, this may have been due to non-compliance with treatment; and that in June 2021 Plaintiff "was intermittently compliant with insulin." (A.R. 24-25).

Lastly, it is worth nothing that the ALJ found persuasive the opinion of a state agency medical consultant and formulated an RFC similar to that opined by the consultant. (A.R. 26).

Accordingly, the Court concludes that the ALJ did not err by finding Dr. Montoy's opinion to be "less persuasive" after consideration of the supportability and consistency factors.

**C.  Remedy**

Plaintiff states that "the Court should remand this case to SSA for the payment of benefits or in the alternative, the Court should remand this case for a new hearing." (ECF No. 21, p. 30). Defendant contends that, should the Court find error in the ALJ's decision, the proper remedy is to remand for further proceedings. (ECF No. 23, pp. 10-11).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test, with each of the following parts of the test needing to be satisfied to remand for benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, even if all these parts are met, the Court may still remand when "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021. Notably, remand for further proceedings is the "ordinary" requirement whereas a remand for payment of benefits is the rare exception. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, the Court finds that remand for further proceedings rather than an award of benefits is warranted. As noted above, the ALJ failed to properly consider Plaintiff's mental limitations at Step Two and when formulating the RFC. The record thus needs further development.

## II.    CONCLUSION AND ORDER

Accordingly, the decision of the Commissioner of the Social Security Administration is AFFIRMED, in part, and REVERSED and REMANDED, in part, for further administrative proceedings consistent with this decision. On remand, the ALJ is directed to find Plaintiff's mental limitations severe at Step Two and to properly consider his mental limitations when formulating the RFC, and to solicit any necessary testimony from the VE. The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated:    **November 21, 2023**                    /s/ Erica P. Grosjean
                                                   UNITED STATES MAGISTRATE JUDGE